UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY HERROCK, as an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUTTER HEALTH, a California corporation; PALO ALTO MEDICAL FOUNDATION FOR HEALTH CARE, RESEARCH AND EDUCATION, a California corporation; PALO ALTO FOUNDATION MEDICAL GROUP, a California corporation; FRANCIS A. MARZOO; AMY CONNOLLY; DENISE BURGESS; VICKI WAHL; DOE 1; DOE 2; DOE' DOE 4' DOES 5 through 100, inclusive,<br><br>Defendants. | No. 2:13-cv-00557-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Cindy Herrock ("Plaintiff") seeks redress from her former employer, Defendant Palo Alto Medical Foundation for Health Care, Research and Education ("PAMF") as a result of her termination in January of 2012. Plaintiff has also named several other entities and individuals as defendants, including Defendant Sutter Health.  Presently before the Court is Sutter Health's Motion for

1

Summary Judgment, made on grounds that Sutter Health is not and has never been Plaintiff's employer, with judgment as a matter of law on Sutter Health's behalf therefore appropriate.  For the reasons set forth below, Sutter Health's Motion will be GRANTED.

## BACKGROUND

Plaintiff was hired on December 12, 2011 as a Registered Nurse II.  Defendant Sutter Health's Statement of Undisputed Fact ("SUF") No. 1.  The letter conveying Plaintiff's Offer of Employment, dated December 1, 2011, was signed by Defendant Denise Burgess, a Nurse Recruiter, and states unequivocally that Plaintiff would work for PAMF's Los Altos OB/GYN Department, reporting to Defendant Amy Connolly.  Both the letterhead and the body of the offer letter itself also identified PAMF as an affiliate of Sutter Health.

Just over a week after she started work, Plaintiff contacted Vicki Wahl, PAMF's Human Resource Manager, and stated that her religious beliefs precluded her from assisting with voluntary abortions.  See Dec. 26, 2011 email from Plaintiff, Ex. D. to the Wahl Decl.

On January 13, 2012, just over a month after Plaintiff's employment commenced, she was terminated by Vicki Wahl after Wahl claims she unsuccessfully tried to find another position that accommodated Plaintiff's views.  According to Ms. Wahl, the termination decision was made by Ms. Wahl and she did not consult, discuss or in any way advise Sutter Health with respect to her decision to terminate Plaintiff's employment.[1]

///
///

---

[1] While Wahl does concede that she asked Sutter Health's lawyers for legal advice (Wahl Decl., ¶ 7) and that such services were made available (along with fundraising development, marketing and audit service, among others), as part of the general services for which PAMF paid as a Sutter affiliate. Id.

2

All of the individuals directly involved in Plaintiff's employment, from Nurse Recruiter Denise Burgess to Plaintiff's direct supervisor, Amy Connolly, and finally to Ms. Wahl, all were employees of PAMF.  Decl. of Helen A. Wainwright, ¶ 22; Wahl Decl., ¶¶ 1, 12.[2]

On February 23, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission contending that she was discriminated against because of her religion, in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff's Charge, as signed under oath, reported her employer as PAMF, and nowhere in the Charge is there any mention of Sutter Health.  EEOC Charge, Ex. D. to Decl. of Alex Hernaez.

PAMF and Sutter Health are nonprofit public benefit corporations, separately organized under the California Nonprofit Public Benefit Corporation Law, California Corporations Code §§ 5110, et seq.  Each entity maintains its own articles of incorporation and bylaws.  Sutter Health is not the parent corporation of PAMF, and as indicated above PAMF is designated as a Sutter Health affiliate.  Wainwright Decl., ¶¶ 8-9.  PAMF and Sutter Health each have their own separate Board of Directors and officers; none of the members of Sutter Health's Board serve on PAMF's Board. Id. at ¶¶ 12-14.  Moreover, each entity maintains separate Employee Identification Numbers, maintains separate bank and financial records, does not share physical office/facility space, and files separate tax returns.  Id. at ¶¶ 16-19.  PAMF and Sutter Health also have separate Human Resources departments with separate policies and personnel files for their respective employees.  Id. at ¶ 21; Wahl Decl., ¶ 9.  Perhaps most significantly for purposes of the present matter, PAMF's day-to-day-operations, including administration, employment, labor relations, grievance processing and contract negotiations, were and continue to be developed, maintained, and updated by PAMF, as opposed to Sutter Health personnel.  Wahl Decl., ¶¶ 9-10.  Both entities have their own employee payroll and employment policies.  Wainwright  Decl. at ¶ 21.

---

[2] The Court notes that Plaintiff has interposed various objections to the Wahl and Wainwright Declarations cited herein, primarily on foundational grounds.  Those objections are overruled.  The Court finds that all evidence cited within this Background section is properly admissible.

1  Sutter Health, whose corporate purpose is to conduct charitable, educational and
2  scientific activities for the advancement of health care, provides its affiliates, including
3  PAMF, with general support services as indicated above that includes fundraising
4  development, marketing activities, treasury assistance, legal services and support for
5  managed care contracts. Each affiliate pays Sutter Health an allocation fee for these
6  support services. Id. at ¶ 4. Unlike PAMF, because Sutter Health is not an actual health
7  care facility, it has no acute health care hospital license. Id. at ¶ 5. Sutter Health is also
8  not a party to the collective bargaining employment that governed the employment of
9  individuals working for PAMF, including Plaintiff. SUF No. 3.

## STANDARD

13  The Federal Rules of Civil Procedure provide for summary judgment when "the
14  movant shows that there is no genuine dispute as to any material fact and the movant is
15  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.
16  Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to
17  dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.
18  In a summary judgment motion, the moving party always bears the initial
19  responsibility of informing the court of the basis for the motion and identifying the
20  portions in the record "which it believes demonstrate the absence of a genuine issue of
21  material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial
22  responsibility, the burden then shifts to the opposing party to establish that a genuine
23  issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith
24  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
25  253, 288-89 (1968).
26  In attempting to establish the existence or non-existence of a genuine factual
27  dispute, the party must support its assertion by "citing to particular parts of materials in
28  the record, including depositions, documents, electronically stored information,

4

1 affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
2 not establish the absence or presence of a genuine dispute, or that an adverse party
3 cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
4 opposing party must demonstrate that the fact in contention is material, i.e., a fact that
5 might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
6 Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
7 Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also
8 demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
9 such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,
10 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
11 before the evidence is left to the jury of "not whether there is literally no evidence, but
12 whether there is any upon which a jury could properly proceed to find a verdict for the
13 party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251
14 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
15 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
16 Rule [56(a)], its opponent must do more than simply show that there is some
17 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,
18 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
19 nonmoving party, there is no 'genuine issue for trial.'" Id. 87.
20       In resolving a summary judgment motion, the evidence of the opposing party is to
21 be believed, and all reasonable inferences that may be drawn from the facts placed
22 before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at
23 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
24 obligation to produce a factual predicate from which the inference may be drawn.
25 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,
26 810 F.2d 898 (9th Cir. 1987).
27 ///
28 ///

# ANALYSIS

Sutter Health asserts that Plaintiff's claims premised on violations of the California Fair Employment and Housing Act (the Second, Fourth, and Fifth Causes of Action) and her claims alleging negligent supervision, wrongful termination, and violation of California Labor Code § 970 (the First, Third, and Eighth Causes of Action, respectively) all require the existence of an employee-employer relationship in order to be actionable against Sutter Health.[3] Sutter Health similarly contends that Plaintiff's Sixth Cause of Action, for deprivation of civil rights, and her Seventh Cause of Action, for intentional infliction of emotional distress, also depend upon Sutter Health's status as her employer. Consequently, according to Sutter Health, the claims asserted by Plaintiff against Sutter Health fail in the absence of an employment relationship. In her Complaint, Plaintiff asserts that both Sutter Health and PAMF employed her, being "members of and engaged in a joint venture and common enterprise and acting within the course and scope of and in pursuance of said joint venture and common enterprise." Pl.'s Compl., ¶¶ 2-3. Plaintiff's Opposition does not counter Sutter Health's contention that all claims against it depend on Plaintiff being deemed to be a Sutter Health employee. Plaintiff has not, however, and cannot, so qualify and therefore Plaintiff fails to rebut Sutter Health's showing that it is entitled to summary judgment.

Despite Plaintiff's allegations, both California and federal law recognize a strong presumption that separate corporate entities like PAMF and Sutter Health have separate existences and are not co-employers. Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737 (1998). That presumption can be overcome if (1) the entities are shown to be a single employer in an integrated enterprise; (2) the entities are found to be joint

---

[3] "California Labor Code § 970 prohibits employers from inducing employees to move to, from, or within California by misrepresentation of the nature, length or physical conditions of employment." Schultz v. Spraylat Corp., 866 F. Supp. 1535, 1541 (C.D. Cal. 1994) (emphasis added). Similarly, Plaintiff's claim for intentional infliction of emotional distress, as directed to both Sutter Health and PAMF, is specifically predicated on Defendants having "abused their special position as plaintiff's superiors. . ." Compl, ¶ 47.

6

1  employers; (3) one entity acts as the agent of the other; or (4) the entities are alter egos.
2  As stated above, Sutter Health is not the parent corporation of PAMF, and instead only
3  provides certain support services to PAMF as a Sutter affiliate.  Nonetheless, the
4  authority pertaining to parent/subsidiary organizations and when, and under what
5  circumstances, such entities should be considered as an integrated enterprise for
6  employment purposes is instructive for purposes of adjudicating the present matter with
7  respect to Sutter Health's liability.

8      Sutter Health's motion delineates how it cannot be considered an employee under
9  either integrated enterprise or joint employer theories, and further explains how the
10  circumstances of this matter cannot point to either agency or alter ego liability on the part
11  of Sutter.  Plaintiff's opposition offers nothing to dispute Sutter Health's contentions in
12  this respect other than (1) to claim that the seminal Laird decision has been overruled by
13  Reid v. Google, 50 Cal. 4th 512 (2010); and (2) to argue that it was Sutter Health that
14  dictated adoption of an abortion protocol despite the fact that Plaintiff offers no evidence
15  to support that assertion.[4]

16      First, as Sutter Health's counsel points out, the California Supreme Court's
17  subsequent decision in Reid impacted Laird only on an unrelated evidentiary issue
18  dealing with how to treat specific evidentiary issues on appeal.  The Reid decision does
19  not question the viability of Laird's substantive treatment of co-employer liability and,
20  consequently, Laird's pronouncements in that regard remain good law.

21      After being terminated from her sales position with the PennySaver, a publication
22  owned by Sutton Industries, Inc., the plaintiff in Laird sued Sutton's parent corporation,
23  Cap Cities, alleging causes of action for employment termination and wrongful
24  termination similarly to those advanced by Plaintiff herein.  In determining whether Cap
25  Cities was in fact plaintiff's employer under the "integrated enterprise test, the Laird court

---

[4] While Plaintiff's declaration refers only to nurse assistance for voluntary therapeutic abortions as a Sutter Health "protocol," she identifies no evidence whatsoever to support that contention. See Herrock Decl., ¶ 4.  Without more, that unsubstantiated allegation is not sufficient to create a triable issue of fact requiring that this Motion be denied.

7

noted that there, as here, the causes of action at issue were premised on state law and, in particular, on alleged violations of the California Fair Employment and Housing Act, California Government Code § 12900 et seq.) ("FEHA").  Laird went on to recognize however, that since FEHA and Title VII of the federal 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. share the same nature and purpose, California courts frequently look to federal Title VII caselaw for guidance in interpreting the FEHA.  Laird, 68 Cal. App. 4th. at 737 (citing Mixon v. Fair Employment and Housing Com., 192 Cal. App. 3d 1306, 1316-17 (1987)).  Laird therefore proceeded to look to federal law under Title VII in analyzing whether Cap Cities should be determined to be a single employer along with PAMF pursuant to the so-called "integrated enterprise" test.

### A.  Integrated Enterprise Test

Under the integrated enterprise test, four factors are considered:  (1) the interrelation of operations between the two entities; (2) whether they share common management; (3) the degree to which centralized control of labor relations exists; and (4) whether there is common ownership or financial control.  Laird at 737-738 (citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir. 1997)).  While these four factors are considered together, whether or not the entities share centralized control of labor relations is frequently considered the most important indicia of an integrated enterprise.  Id.  Moreover, to satisfy the "control" prong; the first corporation must control the day-to-day operations of the second.  Laird, 68 Cal. App. 4th at 738.

Here, as stated above, Plaintiff has made no effort to controvert Sutter Health's contention that none of the above factors are present.  The Background section of this Memorandum and Order demonstrates that PAMF's day-to-day operations, including administration, employment, labor relations, grievance processing, and contract negotiations, were and continue to be developed, maintained and updated by PAMF personnel.  Wahl Decl., ¶¶ 9 10.  Since there consequently is no centralized control of labor relations between Sutter Health and PAMF, that factor weighs against considering the two entities as a single employer.  Id.; see also Wainwright Decl., ¶ 21. Moreover,

with two different Boards of Directors and different officers for both Sutter Health and PAMF, and with separate administration, the common management prerequisite is also absent. Wainwright Decl., ¶¶ 12 15; Wahl Decl, ¶ 10.  Finally, Sutter Health is not the parent corporation of PAMF (SUF No. 21), and each company maintains its own bank accounts with separate financial books and records. Wainwright Decl., ¶ 19.  None of these factors point towards a single enterprise.  Plaintiff here argues little more than that Sutter Health had some amorphous oversight for its affiliate, but, as Laird recognizes, not even general policy statements are enough to satisfy the requisite control where day-to-day decisions are not made in a unitary fashion.  In this case, there is absolutely no evidence that there was either day-to-day control or that employment decisions were made by a single source.  The bare fact that PAMF is a Sutter Health "affiliate," without more, is insufficient even if one assumes for argument's sake that the entities are viewed as linked because of that affiliate relationship.  See Laird, 68 Cal. App. 4th at 740 (even if entity claims credit in the public eye for the operations of the other, this does not demonstrate that the entity played any part in the critical aspect of running the other entity's day-to-day business).

### B.  Joint Employers

The determination of whether Sutter Health and PAMF are joint employers depends on factors similar to those outlined above with respect to the integrated employer test.  In deciding joint employer status, courts look to (1) the nature and degree of control over employees; (2) day-do-day supervision, including discipline; (3) the authority to hire and fire the employee and to set conditions of employment; (4) the power to control pay rates or methods of payment; and (5) control over employee records, including payroll. Wynn v. Nat'l Broadcasting Co., 234 F. Supp. 2d 1067, 1093 (C. D. Cal. 2002).  Any analysis of an individual's employment status requires assessment of the totality of circumstances reflecting the employment relationship, and the extent to which an entity like Sutter Health controls Plaintiff's job performance. Vernon v. State of California, 116 Cal. App. 4th 114, 124 (2004).

Here, the fact that there is no evidence that Sutter Health exercises day-to-day control over PAMF employees militates against any funding of joint employment just as it defeated any inference of an integrated enterprise. It must further be pointed out, however, that the evidence shows that Plaintiff was both hired and fired exclusively by PAMF personnel as opposed to anyone employed by Sutter Health. The fact that Vicki Wahl consulted with an attorney working for Sutter Health, pursuant to Sutter Health's obligation to provide certain legal services to its affiliates, does not change that determination. Moreover, as indicated above, both Sutter Health and PAMF maintained separate payroll systems along with separate employment policies. Wainwright Decl., ¶ 21. Finally, PAMF's Human Relations Department, and not anyone associated with Sutter Health, conducted all labor relations activities, including entering into collective bargaining agreements on PAMF's behalf and maintaining separate personnel files for PAMF employees. Wahl Decl., ¶ 9. The totality of circumstances present here clearly does not merit a finding of joint employment. Indeed, as Sutter Health argues, Plaintiff does not identify a single piece of paper that suggests any employment relationship between Plaintiff and Sutter Health as opposed to PAMF.

### C. Other Theories

Principles of agency and alter ego liability are the remaining two theories available to overcome the presumption that PAMF and Sutter Health are in fact separate entities and not co-employers. With respect to agency, Plaintiff's Complaint states only in boilerplate fashion that "the defendants, and each of them, were the agents, servants and employees of each of the other defendants, as well as the agents of all defendants…" Compl., ¶ 2. The Complaint makes no reference to potential alter ego liability, and Plaintiff offers no opposition to Sutter Health's assertion that it cannot be liable to Plaintiff as a co-employer under either theory.

///

///

///

Again, both agency and alter ego theories, like the question of whether one company can be liable for the acts or omissions of another based on an integrated enterprise theory, may be examined by reference to both state and federal law pertaining to the responsibility of a parent corporation for the acts of its subsidiary. To establish agency liability, the showing required is that "a parent corporation so controls the subsidiary as to cause the subsidiary to become merely the agent or instrumentality of the parent. Laird, 68 Cal. App. 4th at 741 (citing Linskey v. Heidelberg Eastern, Inc., 470 F. Supp. 1181, 1184 (E.D.N.Y. 1979)). In addition, with respect to potential alter ego responsibility, to justify piercing the corporate veil on that theory in order to hold a parent liable for the acts or omissions of its subsidiary, Plaintiff herein "must show that there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist, and that an inequitable result would follow if the parent were not held liable." Laird, 68 Cal. App. 4th at 742.

Plaintiff here has offered no argument to advance liability on the part of Sutter Health on either agency or alter ego grounds, and the Court finds that the same considerations already addressed above with respect to the integrated enterprise and joint employer analysis mandates against the availability of either theory in this matter.

## CONCLUSION

For all the foregoing reasons, Defendant Sutter Health's Motion for Summary Judgment (ECF No. 24) is GRANTED. Since this Memorandum and Order disposes of the claims asserted against Sutter Health in their entirety, Sutter Health's Motion for Leave to File a Second Motion for Summary Judgment (ECF No. 29) is DENIED as

///
///
///
///

11

moot.  Since all the remaining Defendants to this matter were dismissed by Order filed November 14, 2013 (ECF No. 20), the judgment to be entered in favor of Sutter Health resolves this matter in its entirety.  The Clerk of Court is therefore directed to close this file.

    IT IS SO ORDERED.

Dated:  October 30, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT